removing the tin band, the cover is still united to the box, as before, by the lead or other soft metal, which may be easily cut. Mr. Copeland says: "In my opinion, it neither describes nor suggests the invention of the complainants; and, in fact, in placing the lead or solder under the band, it does purposely what the complainants intended to avoid." To say the least, the description is ambiguous. It clearly describes a band of tin lined with lead to close a can. This is not the plaintiffs' structure, nor the defendants', as was held by Judge Wheeler.

The application is refused.

[NOTE. The decree here sought to be reviewed was subsequently amended, on defendants' application. 8 Fed. 434.]

## Case No. 3,744.

### In re DE FORD.

[18 N. B. R. (1879) 454.][1]

#### District Court, W. D. Tennessee.

INVOLUNTARY BANKRUPTCY—REGISTER'S POWERS.

The register has power to make a valid adjudication in an involuntary case where the alleged bankrupt has made default.

By T. J. Latham, Register: To the Hon. E. S. Hammond, Judge of said Court: Julius Bamberger and others filed their compulsory petition in bankruptcy in this case July 1, 1878, on which day your honor directed that the order to show cause issue; which petition and order are herewith referred. The order was made returnable July 10, 1878, but subsequently, viz., July 3rd, another order was made, changing the return day to July 16, 1878. The order to show cause is on file, returned duly executed. On the 27th day of July, 1878, S. W. Hatchett, a register of this court, by order signed by him, adjudicated said C. H. De Ford a bankrupt, which order of adjudication is herewith referred. I am asked to certify to your honor the question as to whether the register had the power to make a valid adjudication, this being a case of compulsory bankruptcy. By section 4 of the bankrupt act [of 1867 (14 Stat. 519)], it is enacted that registers shall have power to make adjudication of bankruptcy, "provided, however, that nothing in this section contained shall empower a register to commit for contempt or to hear a disputed adjudication." Sup. Ct. Rule No. 4 provides that "upon the filing of a petition in case of voluntary bankruptcy, or as soon as any adjudication of bankruptcy is made upon a petition filed in case of involuntary bankruptcy, the petition shall be referred to one of the registers in such manner as the district court shall direct." While section 4 of the act seems to clearly imply that the register may make all uncontested adjudications, rule 4 seems to imply with equal clearness that he can have no power in case of

involuntary bankruptcy until after adjudication. But it must be observed that rule 4 contemplates that a compulsory petition will necessarily be contested, which is far from being the case, and the supreme court clearly recognizes this fact, and provides accordingly in framing the forms and orders for enforcing the provisions of the act. At the foot of form 60, they say: "If default be made by the debtor to appear pursuant to the order upon a creditor's petition, the subsequent order may be made by a register in bankruptcy." Considering that this note is not only last in order of all the provisions on this point, but made with the attention of the supreme court directed particularly to the question now under discussion, it seems to me they could have had but one object, and that to free the question from doubt. The order of adjudication was directly before them, and they plainly provide that, in case of default by the debtor, that "order may be made by a register in bankruptcy." In this case the order of your honor was a clear recognition of the sufficiency of the charges in the petition. If proved, they would establish a case of bankruptcy. A denial would raise a contest which only the district judge could hear. Default was an admission that there was no defense, and that consequently he was a confessed bankrupt, and there could be no contest. Clearly the district judge could have made the adjudication at chambers, because of the default; and, for the same reason, if the supreme court form 60 means anything, it is that there being default the "order may be made by a register in bankruptcy." Such, too, has been the uniform practice of this court under the construction given by his honor, Judge Trigg.

L. and E. Lehman, for petitioning creditors.

HAMMOND, J. I concur with the register in the foregoing opinion. Section 4998, Rev. St., is a clear grant of power to the register to make adjudications of bankruptcy in cases unopposed. There is no more of an anomaly in the exercise of such a power by that officer than in its exercise in any other matter in an involuntary case where there is no contest. General order No. 4, and form No. 60, with its note 1, taken together, mean only that there shall be no reference in a contested case of involuntary bankruptcy until after adjudication. When the alleged bankrupt suffers a default, the court may refer the case to the register to enter the order of adjudication, because it appears that there is no opposition. As soon as a contest arises in any matter before the register, the act makes ample provision for its decision by the court. Rev. St. § 5009. My learned predecessor made a general order referring all involuntary cases, where default was made upon the order to show cause, to the register, and authorized him to make adjudication, it being then an

---

[1] [Reprinted by permission.]

uncontested matter. It was a convenient and necessary practice, as he was necessarily often absent at long intervals from each of the three judicial districts of which he had charge. I have no doubt of his power to make that order, and I shall not disturb it. The application to vacate the former order of adjudication is therefore denied. The clerk will certify this opinion to the register.

## Case No. 3,745.

### In re DE FOREST.

[9 N. B. R. 278.][1]

District Court, N. D. Ohio. 1874.

INVOLUNTARY BANKRUPTCY — CHARACTER OF PROCEEDING—JURY TRIAL—NEW TRIAL.

1. A proceeding to have a debtor adjudged bankrupt is a civil and not a criminal proceeding.

2. Where a debtor denied the alleged acts of bankruptcy and demanded a jury trial, and upon such trial the jury found the facts alleged in the petition were untrue, *held*, the district court has the same power over verdicts rendered in such cases as courts of common law, and may, on proper cause shown, set them aside and order a new trial.

[Cited in Re California Pac. R. Co., Case No. 2,315.]

In bankruptcy.

WELKER, District Judge. R. A. De Forest having filed his answer denying the acts of bankruptcy charged against him in the petition, demanded a trial thereof by a jury. At the last term of this court a trial was had before a jury and a verdict returned that the facts set forth in the said petition were not true; thereupon, on motion of petitioners, the verdict of the jury was set aside by the court and a new trial ordered for reasons alleged in the motion. De Forest then filed a motion asking the court to set aside its order setting aside the verdict as above stated, and asking that the proceedings in bankruptcy be dismissed, because the jury had decided in his favor on the issue submitted to them.

The question now submitted to me on the last motion is, whether the district court was authorized to set aside the verdict of the jury and grant a new trial when the verdict was so in favor of the alleged bankrupt. The forty-first section of the bankrupt law [of 1867 (14 Stat. 537)], among other things, provides: "That if upon such hearing or trial the debtor proves to the satisfaction of the court or jury, as the case may be, that the facts set forth in the petition are not true, * * * the proceedings shall be dismissed and the respondent shall recover costs." Under this section it is claimed the court has no discretion in setting the verdict aside, but if such finding be for the debtor a dismissal must follow the verdict as a matter of course. It will be found that the forty-second section also provides: "That if the facts set forth in

[1] [Reprinted by permission.]

the petition are found to be true, * * * the court shall adjudge the debtor to be a bankrupt, &c." The construction of these two sections, then, raises the question, whether the court has the authority to set aside the verdict of a jury in the trial of charges of bankruptcy, whether the finding be for the debtor or against him. The debtor, however, insists that the proceedings against him are quasi criminal, and a verdict of acquittal entitles him to a discharge. This claim is not tenable. It does not involve any charge of crime and is, like every other question of fact, to be decided by weight of evidence, and tried like any civil case. Questions of fraud do not necessarily involve crime, and none of the acts of bankruptcy set forth in the law constitute a charge of crime against a debtor.

The district court has criminal and civil jurisdiction triable by jury. Provisions are made in the statute for attendance of juries at the terms of the court, and it possesses full power in the trial of criminal and civil cases to try cases by juries, and if it were not for constitutional restrictions the same power could be exercised in criminal cases. In case of acquittal, the constitution protects a defendant from a second trial for the same offence. It is exercised in cases of conviction. Incidental to the trial of jury causes, all courts of record, unless specially restricted from its exercise, possess the power of revising verdicts of juries, and setting them aside, in all civil cases in its discretion. This court is not one created by the bankrupt law, with only such special powers as are conferred therein. It existed before its passage. The bankrupt law, therefore, in the first section, provides: "That the several district courts of the United States be, and they hereby are, constituted courts of bankruptcy, and they shall have original jurisdiction in their respective districts in all matters and proceedings in bankruptcy; and they are hereby authorized to hear and adjudicate upon the same according to the provisions of this act." The forty-first section provides, also, that if the debtor, in writing, demands a jury trial, the court shall order a trial by jury at the first term of the court at which a jury shall be in attendance, to ascertain the fact of such alleged bankruptcy. This implies a jury trial, like any other case, to ascertain the facts charged against the debtor, and subject to the control of the court in its discretion in the way adopted in the usual practice of courts. It is made the duty of the court to enter judgment on the return of verdicts of juries in all cases, but this has never been held to mean that the court has no authority to set aside verdicts in its discretion. There is no positive restriction in the bankrupt law, to the court exercising the authority and power, to set aside verdicts and grant new trials. Again, the district court exercises not only statutory, but common law powers within its jurisdiction; and where issues of fact are made entitling parties to a trial by jury, such trials are con-